E-FILED
Monday, 01 June, 2026  12:34:42 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MICHAEL HENDRICKS,

      Plaintiffs,

vs.

                      Case No.: 25-cv-01130

RYAN BOHM, KATHLEEN SCHOPP, "SARAH",
JEN COMPTON, TRINITY SERVICES GROUP,
INC. and LIVINGSTON COUNTY,

      Defendants.

## DECLARATION OF LISA DRAPER

      I, Lisa Draper, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the foregoing is true and correct:

1.      I am the Jail Superintendent at the Livingston County Jail ("the Jail").

2.      I have personal knowledge of the records maintained and procedures utilized at the Jail.

3.      The Jail has a grievance process for the resolution of inmate grievances.

4.      The grievance procedure specifically provides that grievances must be filed by the detainee five days from the incident that the grievance arises from.

5.      The four-step inmate grievance process is found on pages 8 and 9 of the Livingston County Jail Handbook.

6.      A true and correct copy of the Livingston County Jail Handbook is attached hereto as Exhibit A.

7.      The Jail utilizes a kiosk system for inmate grievances, inmate requests and sick call records.

1

**EXHIBIT 1**

8. The kiosk system used by the Jail for inmate grievances, inmate requests and sick call records is a standard system used by many jails in the state of Illinois.

9. Each inmate grievance, inmate request and sick call record and response by jail administration is entered in the system at the time the filing is made by the maker of the record of an inmate grievance, inmate request, sick call record or jail administration response.

10. Each entry in the system for an inmate grievance, inmate request, sick call record and jail administration response is given a unique identifying number to allow the request or response to be tracked.

11. The Jail maintains all inmate grievances, inmate request forms, sick call records and administration responses in the ordinary course of business.

12. In my capacity as Jail Superintendent at the Jail, I have conducted a diligent search of the inmate grievances, inmate request forms, sick call records and responses maintained by the Jail regarding any request or appeal submitted by Michael Hendricks concerning his detention at the Jail.

13. After reviewing the Jail grievance records, I found no record indicating that Michael Hendricks submitted a Step 3 grievance appeal regarding the claims in this lawsuit to me.

14. This declaration is based on my personal review of the records and information available to me in the normal course of business.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 26 day of May. 2026, at Pontiac , Illinois.

_Lisa Draper_
Lisa Draper

2

Jail Superintendent
Livingston County Jail

# LIVINGSTON COUNTY JAIL

# 844 West Lincoln Street
# Pontiac, IL 61764

### DIRECTIONS TO LIVINGSTON COUNTY JAIL

From I-55 take exit 197 and go East on 116 into Pontiac.  Go straight through 4 stoplights, once over the railroad tracks, take the second right (West Street). Road ends at the Livingston County Jail, visitor parking available at the front of the building.

**EXHIBIT**

**A**

1

Hendricks 1

# CONTENTS

**INTRODUCTION** 4

**SECTION I INTAKE**
Telephone use 5
Clothing and Property Issue 5
Classification 6

**SECTION II DETAINEE RIGHTS**
Rights and Condition of Confinement 7
Prison Rape Elimination Act (PREA) 8
Detainee Grievances 8
Filing Standard Grievances 8
Responses to Grievances 9
Appealing a Grievance Response 9

**SECTION III GENERAL OPERATIONS**
Assistance & Referrals 10
Meal Service 10
Detainee Food Program 10
Detainee Movement 11
Lock Down 11
Television 11
Security Inspections 12
Daily Inspections 12
Transport to Department of Corrections 12

**SECTION IV DETAINEE RULES OF CONDUCT**
General Conditions of Rule Violations 12
General Housing Unit Regulations 12
Class 300 Minor Rule Violations 13
Class 200 Major Rule Violations 14
Class 100 Major Rule Violations 14
Disciplinary Hearing 15
Restrictive Housing 16

15

**SECTION V PERSONAL POSSESSIONS, HYGIENE, AND HOUSEKEEPING**
Showers 17
Haircuts 17
Razors/Nail Clippers 17
Laundry Operations 17
Housing Unit/Cell Housekeeping 17
Allowable Possessions 18
Detainee Request Forms 19

2

**SECTION VI HEALTH CARE SERVICES**
Request for Medical Services                                  19
Medications                                                  19
Mental Health/Substance Abuse Services                       19

**SECTION VII PROGRAMS AND SERVICES**
Visitation                                                   19
Online Visitation                                            20
Legal or Professional Visitation                                   21
Religious Services                                           21
Property Release                                             21
Telephone Service                                            21
Mail                                                         22
Tablets                                                      23
Commissary                                                   24
Library                                                      24
Indoor/Outdoor Recreation Areas                              24

**SECTION VIII DETAINEE WORK PROGRAMS (Detainee Workers)**
Eligibility Requirements for Detainee workers                      25

**SECTION IX EMERGENCY PROCEDURES**
Emergency Evacuation                                               25

**SECTION X**
Medical Education – Advanced Health Care                      25

**SECTION XI**
Notice of Rights of Persons Under Arrest                      31

## **INTRODUCTION**

The Livingston County Jail operates on two (2) key principles:

3

1. Staff and detainees work and live in a safe environment.
2. Good behavior and common sense is expected.
   a. The detainee's duties are to follow the rules and regulations and to cooperate with the staff at all times
   b. Good behavior allows detainees to have privileges
   c. Bad behavior causes detainees to lose those privileges and will result in disciplinary action and/or criminal charges
   d. The information contained in this handbook will help detainees during their stay.

## EXPECTED DETAINEE BEHAVIOR

Detainees are expected to follow jail rules, regulations, and behavior guidelines while they are in custody.  It is expected that the detainee will:
1. Follow all rules and regulations.
2. Follow all staff directives and requests.
3. Respect the facility's property and the property of others.
4. Keep assigned cell and common housing area clean, orderly and sanitary at all times.
5. Maintain daily personal hygiene

## GENERAL CONDUCT

1. Loud and/or disruptive behavior will not be tolerated.  If a valid emergency exists that requires immediate attention, it is permissible to call for help.
2. No fighting, arm-wrestling, rough play, horseplay, loud whistling, gambling or singing will be tolerated.
3. Nothing will be passed from one housing unit to another.
4. Acts of a criminal nature will be forwarded to the State's Attorney's Office for prosecution.
5. Running up and down on the stairs or running in the dayroom is not permitted.
6. Sitting on the stairs or in common walkways is not permitted.
7. Watching or looking out the windows will not be tolerated.

## NO SMOKING

**The Livingston County Jail is a completely smoke free facility. The no smoking policy applies to all staff, visitors and detainees. This includes all tobacco products including chewing tobacco and vaping.**

4

## DIRECTIONS TO LIVINGSTON COUNTY JAIL

From I-55 take exit 197 and go East on 116 into Pontiac.  Go straight through 4 stoplights, once over the railroad tracks, take the second right (West Street). Road ends at the Livingston County Jail, visitor parking available at the front of the building.

## <u>SECTION I INTAKE</u>

## TELEPHONE USE AT BOOKING
Detainees entering the Livingston County Jail will be allowed to make a reasonable number of phone calls (no less than 3)  (at least 3 calls within 3 hours) to secure bond, legal counsel, and/or to contact family. Detainees will be allowed to make these phone calls within three hour after being taken into the custody of the Livingston County Jail if possible. Combative or disruptive behavior by the detainee or documented Facility emergencies may inhibit this policy.
- THE COST OF ALL TELEPHONE CALLS WHILE IN BOOKING SHALL BE FREE.
- ALL DETAINEE PHONE CALLS ARE MONITORED AND RECORDED.
- PHONES MAY BE TURNED OFF AT ANY TIME AND WITHOUT NOTICE FOR SECURITY REASONS.

Phones are located in all housing units and will be made available to each unit at 7:30 am after successful completion of the daily inspection. Phones in the Maximum and Medium security Units will be shut off at 9:50 p.m. Phones in the Minimum Security Units will be shut off at 11:50 p.m.. Phone use may be limited at the discretion of the pod control officer. Detainees in disciplinary or administrative segregation will be provided minimum access to phones as required by the Illinois County Jail Standards.

## CLOTHING AND PROPERTY ISSUES
A Detainee that has been booked will be issued property.  The property a detainee will be issued is, but not limited to the following:
1. 2 Uniform Tops
2. 2 Uniform Pants
3. 1 Sheet
4. 1 Mattress cover
5. 1 Blanket
6. 1 Towel
7. 2 Pairs briefs/panties
8. 2 Pairs socks
9. 1 Property tote
10. 1 Cup
11. 1 Flex Spoon
12. 1 Hygiene kit
13. 2 Bras (females)
14. 1 Pair of sandals

5

15. 2 Rolls of Toilet Paper
16. Copy of Detainee Handbook

\*\* A detainee that has had $2.00 or less on their detainee account for 7 days or more can order a hygiene/writing kit by ordering through the commissary vendor on the detainee phone. Orders must be in by Tuesday at 10:00pm to receive during commissary delivery on Thursday. The cost of the hygiene bag will be charged to the detainee's trust fund account.

- All detainees will sign that they have received all issued items.  The officer will also sign the receipt.  All detainees are responsible for any item issued to him/her. All issued items will be returned.  If the item is not returned in the same condition that it was issued, the detainee will be held financially responsible for the items.

**CLASSIFICATION**
All detainees will be housed according to assigned classification. The process of Classification begins at intake to the facility and continues throughout the detainee's incarceration. There are three stages of classification.
- Pre-Classification- At intake and during the booking process
- Initial Classification- Prior to housing assignment
- Re-Classification- periodic review during incarceration

Several factors are considered during classification. Following are some of the primary factors:
- Criminal Charges
- Criminal History
- Previous Jail History
- Special Needs
- Mental & Emotional Stability
- Escape History
- History of assaultive behavior
- Risk of sexual victimization
- Medical status
- Age
- Need to keep separate

The classification process reviews custody classification of prisoners housed in general population every 30 days and the administrative segregation every seven days.
- A Seven Day review considers prisoner custody level, and the level changes (High, Medium, Low) in response to prisoner behavior
- A Seven Day review includes housing assignment, work assignment and programming (when available)
- A Seven Day review is clearly articulated and documented in the prisoners file
- Prisoner housing assignments consider classification factors to include: age, gender, legal status, custody level needs, disabilities, security threats, vulnerabilities, and behavior

6

- Prisoners are informed and provided the opportunity to appeal custody classification and housing assignment.
- Detainees may request a review of their classification once every thirty days.

## SECTION II DETAINEE RIGHTS

## RIGHTS AND CONDITION OF CONFINEMENT

While a detainee is confined to the Livingston County Jail, he/she has certain rights, which are derived from the United States Constitution, the Constitution of Illinois, Illinois County Jail Standards and local ordinances and standards.

The following is a brief description of detainee rights. Detainees must be able to distinguish between privileges and rights.

- Due process procedures
- Classification and housing assignment
- Reasonable precautions to protect detainees from physical or verbal harassment or harm by themselves, employees, or other detainees
- Adequate meal service/nutrition
- Adequate medical care or attention
- Safe, sanitary, and humane conditions
- Adequate air quality
- The availability of toilet, bathing, laundry, and grooming facilities

Privileges are anything offered by the facility that exceeds that which is required by laws or minimum standards. Some activities or services are a privilege, such as television.


**Prison Rape Elimination Act (PREA)/Custodial Sexual Misconduct**

All reports of sexual assault and/or misconduct will be taken seriously.  The privacy and consideration of the victim will be our main priority.  The Livingston County Jail has a zero-tolerance policy concerning sexual assault and/or misconduct.  Results of any investigation involving sexual assault and/or misconduct will be forwarded to the States Attorney for prosecution, where appropriate. Detainees who knowingly and intentionally file a false report will face legal action. All Detainees can call 815-842-8052 toll free to report sexual assaults to the Livingston County Jail. A Domestic Volence & Sexual Assault Service (ADV & SAS) also has a crisis hotline available 800-892-3375.


PREA reports can be made by calling the
Livingston county jail at 815-844-5774
Anonymous reports can be made by calling the
Livingston county jail anonymous tip line at 815-842-8052
External reports can be made by calling PEARL at 815-842-8078
Reports can also be given to any staff member or volunteer or by filling out a
request or sick call form
Outside sexual assault support and mental health services can be contacted at
Safe Journey's (ADV/SAS) 510 N Bloomington St. Streator IL 61364 at 815-672-2353

7

**DETAINEE GRIEVANCES**

A grievance is an internal, confidential process for the resolution of complaints. It is <u>not a process to:</u>

- Request services
- Insult staff
- Retaliate against staff

A detainee must attempt to informally resolve the issue before filing a grievance. Grievances should not be the only method for resolving an issue. If a detainee cannot resolve the issue informally, he/she should explain why in the grievance. **If a detainee files a misleading, slandering (false accusations), including false emergency grievances, the detainee may be subject to disciplinary action or other appropriate action as determined by the Jail Superintendent.**

**FILING STANDARD GRIEVANCES**

Grievance forms are available at all times on the kiosk. It is important to fill out the grievance form completely. Detainees may receive assistance in filing procedures from a staff member or another detainee. Grievances must be filed by the detainee 5 days from the incident that the grievance arises from. Grievance filed after 5 days can be considered invalid, depending on Grievance content. Only one grievance may be filed for any single incident or concern. The grievance request must not contain more than one issue. A grieved issue must not contain offensive or harassing language. A grievance may be withdrawn at any time by submitting such notification in writing to the Jail Superintendent.

**RESPONSES TO GRIEVANCES**

The Jail Superintendent will designate staff members to review detainee grievances. The Grievance Officers will investigate and review all grievances and give a written response to the grievance 5 days of submitted grievance. Upon request, a printed copy can be given to the detainee.

**APPEALING A GRIEVANCE RESPONSE**

When a detainee is dissatisfied with the resolution of his/her grievance, he/she may, within 5 business days of receipt of written notice, appeal in writing to the Jail Lieutenant. You must put the number of the grievance that you wish to appeal. The Jail Lieutenant shall notify the detainee in writing, within 5 business days, (when possible) of the decision of the appeal. If a detainee is dissatisfied with the resolution given by the Jail Lieutenant of his/her grievance, he/she may, within 5 business days of receipt of written notice, appeal in writing to the Jail Superintendent. You must put the numbers of the original grievance and the first level grievance appeal. The Jail Superintendent shall notify the detainee in writing, within 7 business days, (when possible) of the decision of the appeal. If the detainee is still not satisfied, he/she may appeal to the Standards Unit in writing:

Office of Jail and Detention Standards

8

P.O. Box 19277
1301 Concordia Court
Springfield, IL  62794-9277

**DETAINEES RELEASED FROM LIVINGSTON COUNTY JAIL**
If the detainee is no longer detained at the Livingston Count Jail (either because of release or transfer to another facility), the detainee must submit his/her grievance or appeal within 10 working days of the incident in writing by mail or in person to:

Livingston County Jail
844 West Lincoln Street
Pontiac, IL 61764
Attn: Jail Superintendent

The Jail Superintendent will respond to the former detainee's grievance by mail within 15 working days. Responses will be mailed to an address provided by the detainee. If the detainee is dissatisfied with the response, the detainee may appeal to the Office of Jail and Detention Standards Unit in writing.

## SECTION III  GENERAL OPERATIONS

**ASSISTANCE & REFERRALS- Social Services**
A list of local Medical and Mental Health agencies is available upon request.

**MEAL SERVICE**
The meals provide sufficient nutritional value.  All meals are to be eaten in the day room area other than detainees that are on lockdown status. Breakfast is optional but to receive breakfast the detainee must be seated in the dayroom. Detainees will be required to be seated in the dayroom during lunch and dinner meals. This is NOT optional. Detainees will be required to sit at the tables in order for the meal to be served.  Detainees will remain seated at all times while the detainee workers are serving the meal. All doors will remain secured during this time.  At the completion of meals, detainees are required to empty their trays into the trash receptacles provided for this purpose. Throwing utensils, trays or cups in the trash receptacles is a misuse of county property and may result in discipline. Once all trays, cups and sporks are accounted for, cell doors can be opened again and resume normal movement.  Detainees with special diet needs should submit such requests to medical staff through a sick call.  Request for menu substitutes due to detainee religious beliefs should be made in writing on the kiosk to the Jail Lieutenant.

**DETAINEE FOOD PROGRAM**
Inmates will be given the opportunity to order selected items from outside food vendors. The program is designed to offer additional food items as an incentive for positive behavior in the Livingston County Jail. Cost is a predetermined amount to include all

9

charges. The program is optional. The food provider and menus will rotate on a weekly basis. As the program grows, more food providers and menu items may be added.

Guidelines for participation in program are, but not limited to the following
1. Participation in the food program is voluntary and considered a privilege.
2. Orders must be turned in by last call to Correctional Staff (usually Wednesday by 1000hrs), late orders may not be honored. Orders should be filled out completely (Name, Pod, Food Items Ordered). The menu is set with the food provider, no special orders or substitutions will be honored.
3. Food ordered should be for the Detainee ordering. No trading and trafficking or circumventing of Disciplinary Restrictions is allowed. If caught both Detainees may be subject to Disciplinary Process.
4. Food items should be consumed around the time of hand out. Left overs may be considered contraband and subject to being thrown away. Any packaging the food comes in will also be considered contraband and be disposed of if found by Correctional Staff.
5. No changes or refunds will be granted once the order is placed with the food vender.
6. Food ordering is subject to revocation for Disciplinary Infractions. Disciplinary Infractions where the entire pod/unit is involved can result in revocation for the entire pod/unit.
7. Food comes from an outside restaurant and we are not responsible for quality or quantity of meals they prepare. The meals should <u>not</u> be considered Kosher, Halal, Vegetarian, Vegan or food allergen free. <u>Orders placed are at your own risk.</u>
8. **The food program may be suspended at any point and time for any reason.**

### DETAINEE MOVEMENT
While moving throughout the facility, detainees will be required to follow staff directions. Detainees are not to attempt to contact other detainees while moving through the facility. It is at the Correctional Officers discretion whether detainees in General Population will be restrained (handcuffed) during movement. Restraints (handcuffs) are required during movement of any detainee in Disciplinary or Administrative Segregation or any detainee that is considered a high risk. Detainees may be subject to pat search upon leaving and/or returning to their housing unit to check for contraband.

### LOCKDOWN
The lockdown of detainees is conducted at scheduled times daily and as needed.  When lockdown is called detainees must return to their cells immediately. This is not subject for debate and failure to comply may result in immediate transfer to a disciplinary unit pending a disciplinary hearing. Keep all body parts away from the doors while doors are being secured.  At the discretion of the Officer a lockdown may be imposed for all or part of a housing unit.  Maximum and medium security units will lock down every night at 10:00 pm unless otherwise approved by the Jail Superintendent. Minimum-security units will have lights out (TV, phone and lights) at 12:00 a.m.

10

**TELEVISION**

Televisions are privileges provided in most housing units.  Detainees must understand that this privilege can be revoked at any time deemed appropriate by jail staff.  Criteria for revocation are, but not limited to the following;

- Adverse Detainee behavior
- Refusal to follow safety and sanitation regulations
- Tampering or suspected tampering with electrical outlets
- Throwing of food or evidence of such

 The majority will decide on program viewing. When a conflict arises the Pod Control Officer will make the decision.

**UNIT SHAKEDOWNS**

 It is necessary to conduct unscheduled searches, commonly referred to as "shakedowns". Detainees **do not** have the right to be present during shakedowns. Detainees are required to cooperate with officers conducting the shakedown.  Failure to do so may result in disciplinary actions. Anything that is found and considered contraband will be confiscated.  Disciplinary actions may be taken.

**DAILY INSPECTIONS**

Each morning the Pod Control Officer will conduct a walk through to ensure everything is clean and orderly.  Detainees are expected to be prepared for and cooperate during these inspections.  All cells and day rooms must be prepared for inspection by 8:30AM. Cells must be neat and orderly with beds made.  All detainee workers must have their areas ready for inspection before going to their work assignments.  The phones and television in each area will not be turned on until the inspection has been completed, and all cells in the unit are in compliance

**TRANSPORT TO ILLINOIS DEPARTMENT OF CORRECTIONS**

Only Detainee commissary funds will be taken with on transfers to the Illinois Department of Corrections. All other property will need to have arrangements made for them to be picked up or mailed. Detainees must have funds available to cover shipping charges. Property will be kept up to 30 days and after that will be subject to disposal if not picked up by the detainee's designee.

**SECTION IV DETAINEE RULES OF CONDUCT**

**GENERAL CONDITIONS OF RULE VIOLATIONS**

Rules and regulations are developed to ensure the safety of everyone, security of the facility and overall orderly operation.  The rules of conduct contained in this handbook are enforced by staff and must be strictly followed. Violations of Jail rules may result in disciplinary action. All detainees when first placed in disciplinary segregation will have all property searched and held securely for the first 72 hours. Each detainee will be given an indigent kit and religious items. After the first 72 hours are up you will be given all property except commissary items. After the first 72 hours are up each detainee will be

11

allowed one hour out of their cell for shower and each detainee can make phone calls on Discipline Segregation out days.

## GENERAL HOUSING UNIT REGULATIONS
- Do not sit on tables or put your feet on furniture
- Do not sit on the stairs or in common walkways
- Do not throw items from or across the dayroom or from one level to another
- Do not lean over the railing or yell to others from one level to another
- Use common courtesy when interacting with other detainees
- Report immediately when called upon by the Pod Control Officer
- Always wear a complete uniform in the day room and any time outside the unit **(top, bottom, and footwear)**
- No blankets or sheets are permitted in the dayroom
- No mattresses or linen (blankets or sheets) will be allowed on the floor in the dayroom at anytime.
- No Detainee will be allowed to enter a cell that is not assigned to them.
- Do not lay or sleep on the dayroom floor.
- Tables are to remain uncovered (No sheets, blankets, towels or uniforms are to be used to cover tables.

## CLASS 300 MINOR RULE VIOLATIONS:
These are violations that disrupt the routine operation of the facility.  Jail Incident reports (tickets) are issued for these violations.

3-01    Possession of unauthorized clothing or food
3-02    Misuse of county property
3-03    Failure to maintain personal hygiene
3-04    Failure to maintain sanitary and orderly housing conditions
3-05    Gambling
3-06    Disruptive behavior
3-07    Failure to keep walls clean and free from hanging objects
3-08    Failure to wear complete jail uniform
3-09    All property must be kept in the property box (except wet towels)
3-10    Horseplay
3-11    Laying on the floor
3-12    Attempting, conspiracy to or incite to commit any class 300 violations

## Sanctions for Class 300 Rule Violations
Only one sanction may be imposed for each violation.  Sanctions, which may be imposed for these infractions, include:
1. Verbal reprimand
2. Written reprimand
3. Loss of privileges for up to 14 days
4. Review and change of classification, including worker status
5. Third and subsequent offenses will result in Category II sanctions

12

**CLASS 200 MAJOR RULE VIOLATIONS:**

These violations impact the orderly operation, security, and safety of the facility, staff, or detainees.  Jail Incident Reports (tickets) will be issued for these violations.

2-01    Fighting or threatening another
2-02    Sexual misconduct not involving threat or force
2-03    Indecent exposure
2-04    Possession of U.S. currency
2-05    Possession of unauthorized county property, or property belonging to another
2-06    Possession of contraband
2-07    Possession and/or manufacturing unauthorized beverages
2-08    Unauthorized absence from work assignment (detainee worker)
2-09    Failing to cooperate or interfering with detainee count
2-10    Failure to comply with disciplinary procedures
2-11    Disobeying written or verbal orders from Correctional Officers
2-12    Intoxication, consumption, ingestion, or inhalation of intoxicants
2-13    Being in unauthorized area
2-14    Disorderly conduct
2-15    Making or giving false statements or testimony to Correctional Officers
2-16    Gang Activity: Displaying, wearing, using gang insignia or recruiting
2-17    Possessing, manufacturing, or using "stingers" (modified electrical cords)
2-18    Possessing or manufacturing tattoo equipment/tattooing
2-19    Attempting to commit any of the above violations or assist others to commit above violations
2-20    Interference or obstruction of jail lock-down procedures
2-21    Unauthorized movement- moving from one cell to another, switching bunks without authorization
2-22    Being next to the windows
2-23    Smoking or possession of cigarettes, tobacco products, lighters, or matches
2-24    Violation or abuse of  visiting, mail, telephone, or commissary regulations
2-25    Violation or abuse of video visitation.
2-26    Violation or abuse of tablet privileges
2-25    Refusal to report to work (work release)
2-26    Use of unauthorized pin number

### Sanctions for Class 200 Rule Violations

Following are sanctions for class 200 rule violations:

1. Disciplinary segregation for up to 10 days for any one violation and no more then 20 days for all violations arising from one incident
2. Loss of good time for up to 15 days for any one violation
3. Restitution
4. Loss of privileges for up to 28 days
5. Review and change of classification, including worker status
6. Second offense on Video visitation can result in permanent loss of privilege.

**CLASS 100 MAJOR RULE VIOLATIONS:**

13

These are violations that seriously endanger the safety of the facility, staff, or detainees.

1-01   Murder or Attempted Murder
1-02   Assault and/or Battery
1-03   Extortion or Blackmail
1-04   Criminal Sexual assault
1-05   Escape or Attempted Escape
1-06   Arson or setting any type of fire
1-07   Possession of any dangerous or deadly weapon or substance
1-08   Possession of any drugs or drug paraphernalia
1-09   Participation in a riot, strike, or mutinous disturbance
1-10   Traffic in drugs
1-11   Possession of stolen property
1-12   Bribery or soliciting of a staff member
1-13   Theft of property
1-14   Concealing one's identity
1-15   Tampering or interfering with security devices.
1-16   Counterfeiting of any document or official paper
1-17   Flagrant failure to follow safety or sanitation regulations
1-18   Failure to ingest prescribed medication, hording or giving medication to another
1-19   Tampering with or setting off any smoke detector, fire alarm, fire sprinkler
1-20   Destroying, damaging, or defacing any property of the Livingston County Jail
1-21   Violation of Laws of the State of Illinois
1-22   Repeated or Habitual Violations of Major Rules – Detainees who have been found guilty of three or more Class 100 or 200 major rule infractions, either separately or in a single incident.
1-23   Refusal of housing

**Sanctions for Class 100 Rule Violations**

Following is a list of sanctions for class 100 rule violations:

1. Disciplinary segregation for up to 15 days for any one violation and no more than 30 days segregation for all violations arising out of one incident
2. Loss of good behavior allowance for up to 30 days for any one violation
3. Restitution
4. Loss of privileges for up to 60 days
5. Review and change of classification, including worker status
6. Criminal prosecution

**DISCIPLINARY HEARINGS:**

Any Detainee charged with a rule violation shall be given notice of the charges no less than 24 hours before discipline hearing. Disciplinary hearings for rule violations must be heard within eight days of the reported incident. The detainee may waive the disciplinary hearing. When an alleged rule violation is reported, an appropriate investigation is begun

14

within 24 hours of the time the violation is reported and is completed without delay, unless there are extenuating circumstances for delaying: justifiable delays must be documented in the disciplinary record and approved by the facility administrator.

- Absent compelling circumstances, such as a pending criminal investigation, a prisoner does not remain in investigative segregation for longer period of time that the maximum term of disciplinary segregation permitted for the most serious offense charged.
- A prisoner charged with a rule violation receives a written statement of the charge(s) including a description of the incident and specific rules violated. The prisoner is given the statement at the same time the disciplinary report is filed with the disciplinary committee or within 24 hours of the discovery of the incident. Disciplinary hearings cannot be held in less than 24 hours after receiving notice of charges, without the prisoner's written consent.
- Charges may not be changed during the Disciplinary Hearing.
- Prisoners charged with rule violations are present at the hearing, unless they waive that right in writing or through their behavior. Any prisoner's absence or exclusion is documented.
- Disciplinary hearings are convened as practical but no later than eight days, after the alleged violation. Prisoners are notified of the hearing at least 24 hours in advance of the hearing. Reasons for postponement or continuance are documented.
- Prisoners have an opportunity to make a statement and present documentary evidence at the hearing and can request witnesses on their behalf.
- The prisoner's behavior while in investigative segregation is given consideration by the disciplinary hearing officer.
- A written report is made of the decision and supporting reasons, and a copy is given to the prisoner. The hearing record and supporting documentation are kept in the prisoner's file.
- Prisoners may appeal decisions of the disciplinary hearing officer within 5 days of receiving Discipline Hearing Findings. Appeals of disciplinary actions must by affirmed or reversed within 15 days of the appeal.
  - Disciplinary hearing appeals are NOT to be heard via the grievance process. Detainee must file a Disciplinary Appeal Request on the kiosk.

 The Hearing Officer may ask questions of the officer, witnesses and/or the detainee charged with the offense(s).  The Officer will explain charges and describe the basis and supporting evidence for the charges.  Detainees may be excluded from their hearing for disruptive behavior. Failure to be present does not constitute an admission of guilt nor does it justify a dismissal of the disciplinary report.

Disciplinary Reports include, but are not limited to:
- Specific rule violated
- Formal Statement of the charge
- An explanation of the event that includes who was involved, what transpired, and the time and location of the occurrence
- Any physical evidence and disposition
- Any immediate action, including use of force

15

- Reporting staff member's signature and date and time of incident

## RESTRICTIVE/ADMINISTRATIVE HOUSING

- The reason for placing and retaining a prisoner in restrictive housing is clearly articulated, supported by objective evidence, and serves a specific penological purpose.
- Prisoners are not placed in the restrictive/administrative housing more than 72 hours for refusing housing.
- Prisoners in restrictive/administrative housing will be allowed recreational/time out 3 days a week for 2 hours consecutively on those days.
- After 30 days in restrictive housing, the prisoner is removed from restrictive housing, unless the facility administrator certifies that transferring the prisoner to alternative housing is clearly inappropriate.
- A prisoner's restrictive/administrative housing will be reviewed every 7 days by a committee.
- A prisoner in restrictive/administrative housing will by allowed outdoor/indoor recreation (weather permitting) 2 days a week for 1 hour.

## SECTION V PERSONAL POSSESSIONS, HYGIENE, AND HOUSEKEEPING

### SHOWERS

The showers in the general population housing units are available everyday from 6:00 AM until approximately 9:00 pm. Detainees in disciplinary segregation will have access to showers during recreation periods in the unit. Detainees with insufficient funds to purchase hygiene items from the commissary will be allowed to purchase an indigent kit from the commissary company. (The order will arrive with normal commissary). The cost of the indigent kit will be charged to the detainee's trust fund account to be collected when funds are available. Detainees are required to undress and dress in the shower room. Detainees must be fully clothed while in the day room.

### HAIRCUTS

Hair clippers will be placed in housing units the second week of each month to allow detainees to cut hair.

### RAZORS/NAIL CLIPPERS

Razors (disposable) will be handed out everyday by the Pod Control Officer at 7:30AM and will be collected at 8:30 AM. Detainees must fill out a request slip by 11:59pm the night before to receive a razor the following morning. Detainees must receive the razor directly from a Correctional Officer and return it directly to a Correctional Officer. Detainees will be held accountable for the razor. Razor are NOT to be altered.
Nail clippers are available for use by detainees. Detainees wishing to use the nail clippers may do so by placing a sick call. This will be done in the medical office at no charge.

16

**LAUNDRY OPERATIONS**

Laundry will be collected at 8:30 AM and handed back out at 5:30 PM. All laundry must be placed in a laundry bag with the bag secured for pickup. Detainees should notify the Correctional Officer collecting laundry if they cannot securely close their laundry bag. Each laundry bag is color coded to each housing unit. Do not write, draw, alter or damage these bags in any way. Laundry bags are inspected before a detainee occupies a cell and when a detainee is transferred out of the cell. Detainees will be held accountable for any damage or misuse of laundry bags. **The Livingston County Jail is not responsible for any items lost in the laundry.**

**HOUSING                    UNIT/CELL                    HOUSEKEEPING**

Housing Units and cells will be opened at 5:30 AM to allow detainees to come out for breakfast. After breakfast, all detainees will secure in their cells for morning count. Detainees will be provided with supplies to clean the Unit and cells. All detainees are responsible for cleaning their Unit and keeping it clean. At or around 7:30 A.M. the Pod Control Officer will do an inspection of each unit for cleanliness. The Pod Control Officer will not turn on the phone and television in each unit until the Unit passes inspection. After morning count is complete around 7:30AM, the Detainees will be given a choice to remain out in the Dayroom or be secured in their cell. Once that choice is made, the cell doors will not be opened again until meal time. At 10:30 AM, all detainees will be required to lock out of their cells for lunch. Cell doors will remain secured during all meal times. After lunch is completed the Detainees will be given their choice of remaining out in the Dayroom or securing back into their cell. Once that choice is made, the cell doors will not be opened again until meal time. At 4:30 PM, all detainees will be required to lock out of the cells for dinner. Cell doors will remain secured during all meal times. After dinner is completed the Detainees will be given their choice of remaining out in the Dayroom or securing back into their cell. Once that choice is made, the cell doors will not be opened again until lockdown. Detainees will be locked down at or around 0630, 1230, and 1830 for count. Lock out/in procedures are subject to change without warning and at the discretion of security staff. All detainees are responsible for keeping their cell or individual living area clean and orderly. Beds are to be made during the day when not in use. All items are to be stored in the property storage container. The only items that may be left out are: one towel (hanging in towel rack), 1 washcloth, 1 bar of soap, 1 tube of toothpaste and 1 toothbrush.

**ALLOWABLE                                        POSSESSIONS**

A detainee is only allowed items issued by Livingston County Jail, approved mail, legal mail, and items purchased on the commissary according to Livingston County Jail policy or approved individually by the Jail Superintendent.

**Books/Magazines** – Three (3) books or magazines.
**Newspapers**-Three (3)
**Bible -** One (1) soft cover Bible or Koran.
**Eyeglasses -** One (1) prescription only (no sunglasses).
**Dentures -** One (1) Set or Partial
**Prosthesis Device -** Must be approved by medical staff to be in housing unit.

17

**Jail / Legal Mail -** Must be organized, fit in the property tote and must not represent a fire hazard.

**Clothing -**Two (2) issued Livingston County Jail uniforms and one (1) pair of sandals (issued). One pair of shoes (available on commissary). Two (2) briefs and two pairs of socks (issued).

**Linen -** One (1) each Sheet, Blanket, towel & mattress slip cover.

**Personal Hygiene –** Limited to items sold on the commissary or in the indigent bags. All items must be stored in the property tote.

**Food Items -** Only items sold on commissary will be allowed. All food must be stored in the property tote. **NO FOOD MAY BE SAVED FROM MEALS**.

### DETAINEE REQUEST FORMS

Request forms are available on the kiosk. Using request forms and filling them out completely will assist staff in responding.

### SECTION VI HEALTH CARE SERVICES

**REQUEST FOR MEDICAL SERVICES**
Detainees are required to fill out a Medical request form in order to see medical staff or request any over the counter medication.  The request forms are available through the kiosk in your unit. All medical request forms will be emailed to the medical staff. Pursuant to the changes in the Illinois State Statutes, County Jails may collect fees for medical services from detainees. It is the policy of the Livingston County Jail to charge detainees a service fee for medical and pharmaceutical services as well as non-prescription medications. DETAINEES WILL NOT BE DENIED MEDICAL CARE DUE TO INABILITY TO PAY OR DUE TO INSUFFICIENT FUNDS IN THE DETAINEES ACCOUNT.

### MEDICATIONS

Medication will be distributed by doctor's orders.  Detainees are required to bring a cup of water with them to the employee dispensing the medication. They will be required to take their medication in full view of the employee dispensing the medication. They will be required to open their mouth and extend their tongue to verify that they have swallowed the medication.  Detainees should not approach the medication cart unless their name is called. Detainees have the right to refuse to take their medication. Such refusals will be documented and reviewed by the medical staff. Detainees may be allowed to review their medical records but will NOT be given copies.

### MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES

18

A list of local agencies providing medical/mental health services is located on the Kiosk. Anger Management/Substance Abuse classes are provided by the Mental Health staff and scheduled weekly as needed.

## SECTION VII PROGRAMS AND SERVICES

**VIDEO VISITATION**
ALL FAMILY AND FRIEND VISITS ARE MONITORED AND RECORDED. Detainees will be allowed one 30-minute video visit per schedule visit day and 2 video visits per week. Visiting stations are located in each housing unit. All visitors will be required to provide a photo I.D. with full name and date of birth. Detainees and Visitors are required to follow all facility rules. Failure to do so may result in the visit being terminated, disciplinary action for the detainee and revocation of visiting privileges for the visitor. Online video visitation will be available everyday. Online video visitation can be restricted due to disciplinary reasons. **Visitation may be cancelled at any time due to emergencies or facility needs.**

1. **Visiting times**

   **Tuesday, Wednesday, Thursday, and Saturday**
   Begins 12:00 pm – last one starts 4:00 pm
   Begins 7:30 pm – last one starts 9:00 pm

2. Detainees are allowed one visit per day.
3. Visitors 18 and older must present a picture ID  (I.D. will have picture, full name, and date of birth.)
4. All visitors are subject to search.
5. Visitors must not be under the influence of drugs or alcohol.
6. All visitors must be appropriately dressed (NO tube tops, transparent or mesh shirts etc.)
7. Visitors age 18 and under must be **accompanied by a parent or guardian.**
8. No yelling, screaming or threatening mannerisms will be tolerated. This will result in termination of visit.
9. Both parties will remain clothed at all time.
10. The Livingston County Sheriff's Department does not permit contact visits.
11. The visit will start when both parties pickup the receiver, time ends when 30 minutes have passed (the transmission will automatically end).
12. **Visits may be terminated due operational needs of the facility**.
13. Detainees are not allowed to visit with any party that has been court ordered no contact.
14. All visits are on a first come first serve basis by housing units.
15. Visitors that have been incarcerated at the Livingston County Jail within the last 6 months will not be allowed to visit on-site.
16. ALL CONVERSATIONS ARE MONITORED AND RECORDED.

19

**ONLINE VISITATION RULES**
1. The person that schedule the visit must appear on the visit.
2. There will be NO drugs or alcohol on the visit.
3. No unlawful or depiction of unlawful activity.
4. All visitors (including children) will be fully dressed at all times while visible on the visit. This includes pants, shirt and dresses. If at ant time the attire of ANY visitor is deemed inappropriate, the visit will be terminated and you could lose your online privileges up to six months at the discretion of the Disciplinary Board
5. Photographing or video recording will not be permitted.
6. There will be no warning.

**LEGAL VISITS**

Visiting booths are available for legal visits to ensure privacy. Visitors must have a valid photo identification pursuant to their profession. Legal visits do not count towards the allotted family and friend visits. Detainees should advise a Correctional Officer if they have any legal materials to be exchanged. Legal materials will be inspected for contraband only.

**CLERGY VISITS**

Clergy visits do not count towards the allotted family and friend visits. All clergy are required to show identification of being a clergy. Religious materials must be preapproved by administration and given to a Correctional Officer for thorough inspection. When a religious leader of prisoner's faith is not represented through the Jail's chaplaincy staff or volunteers, the Jail Administrator can assist the prisoner in contacting such person.

**RELIGIOUS                                                           SERVICES**

Detainees shall be afforded an opportunity to participate in religious services and receive religious counseling. ***Detainees wishing to participate in services need to sign up on Saturday                                                                              evenings.***
Detainees shall not be required to attend or participate in religious services or discussions.

**PERSONAL PROPERTY**

Detainee personal property will be inventoried by Correctional Staff and detainee. Both parties will sign a property receipt. A property receipt will be place with the inventoried property, the detainee file and a copy will be given to the detainee. Personal property is stored in a secured room. Once a detainee's property has been secured it can only be accessed by approval of the Property Coordinator, by court order, or by detainee's written request to have **all** items picked up. Detainee's requesting items from their personal property, ex: names and addresses, must do so via a request slip and approved by the Property Coordinator. Detainees requesting to release all of their personal property to a third party must do so on a Personal Property Release Form (available on the unit kiosk). Detainee's releasing property will release all property. There is not an option to release partial property. The individual designated to receive the property, must have a positive

20

I.D. with date of birth. Detainees being transferred to another facility (IE Department of Corrections, Bureau of Prisons) must make arrangements to have their property picked up. Detainees must fill out a property release form and arrange to have the property picked up within 30 days of their release from custody of the Livingston County Jail. After 30 days the property will be destroyed.

**TELEPHONE**
ALL TELEPHONE CALLS, ARE MONITORED AND RECORDED, UNLESS PRIOR SPECIAL ARRANGEMENTS HAVE BEEN MADE TO MAKE CONFIDENTIAL CALLS TO DETAINEE'S ATTORNEY. The cost of all phone calls is at the detainee's expense. Detainees will be issued a pin number at booking. Detainees are responsible for keeping their pin number private. Detainees may use their pin numbers to make collect calls. Phones are located in all housing units. They will be made available for use as each unit is cleared for daily inspection at or around 8:30 A.M. and until 9:50 P.M. at lockdown. Phone use above County Jail Standards is a privilege and may be limited by unit or individually due to detainee misconduct, failure to meet inspections or facility needs. The Livingston County Jail is not responsible for lost or stolen pin numbers or funds.

**MAIL**
All incoming mail, non-privileged mail will be sent to:
Smart Communications
C/O Livingston County Jail
Detainee Name - Detainee Number
P.O. Box 9164
Seminole Florida 33775-9164

All incoming mail (letters, photos, greeting cards, etc.) will be scanned into the system and available to detainees to view their postal mail via detainee tablets.

Funds sent to Livingston County Jail detainees must be processed through Jailatm.com or placed in the lobby kiosk at the Livingston County Jail.

All magazines and newspapers must be mailed directly from the publisher. There is no limit to the number of letters sent or received. Stamped envelopes and writing materials can be purchased from the commissary. Detainees will be notified in writing when incoming mail is either returned to sender or when outgoing mail is returned. Notifications will explain why the action was taken. Any mail sent out or in with contraband or anything suggesting illegal activity may cause the detainee to be placed on restricted mail status for up to 90 days. If a detainee is placed on restricted mail status, the detainee may appeal in writing to the Superintendent within 5 days of being placed on restricted mail status.

**Legal Mail, Court Documents, & Publications will continue to be sent to the Livingston County Jail directly.**

Legal Mail will be opened in the detainee's presence and inspected for contraband. Legal mail must be typed on law office letterhead and stamped "Legal mail". Hand written legal mail will not be accepted. Legal Mail will then be scanned into the Smart Communication Tablets and/or copied in the presence of the detainee. (Only 1 copy will be made. Additional copies can be made at the detainee's expense. Copies must be made at the time the mail is handed out/scanned into the system. Later requests for copies will incur the copy charge.

Mail will be delivered to the housing units Monday through Friday except on holidays. Mail sent to detainees should be addressed as follows:

Full name
C/O Livingston County Jail
844 W Lincoln St.
Pontiac, Illinois 61764

Any mail received with no return address will not be accepted. Any mail received after a detainee has been released will be forwarded to the detainee's last known address if known or returned to sender.

Approved attorneys, public defenders, and other privileged professionals will be able to connect to their client/inmate by creating a privileged account on smartinmate.com. Once the account has been approved for privileged communications, the attorney, public defender, or other privileged professional will be able to e-message (up to 30,000 characters) with the Smart Communication's assurance that no communications are recorded or viewable to staff, Smart Communication representatives, or available through discovery.

Detainees that receive presentence investigations reports (PSR) from Probation Services will not be allowed to keep on their person. When the report is received it will be opened in front of the detainee and inspected. The PSR will be placed in a secured locker by staff in the Livingston County Law library. The detainee must put a request in on the kiosk requesting access to their PSR. The detainee will be placed in one of the Law Libraries. Correctional staff will retrieve the PSR for the secure locker assigned to the requesting detainee. The PSR will be handed to the detainee for viewing, the detainee will not be allowed to copy the PSR. When the detainee is done the detainee will notify Correctional Staff, the staff will inspect the PSR to ensure all of the PSR is present and not altered. The detainee will be searched before leaving the law library.

Outgoing mail will be collected at 9 P.M. to be sent out the following day. Outgoing non-privileged mail may be inspected and scan read. Outgoing mail is to be collected unsealed. Mail received sealed, with the exception of Legal mail, will be returned to the detainee. Detainees are responsible for ensuring the letters are addressed properly. The return address must include the detainee's full name, Livingston County Jail, 844 W. Lincoln, Pontiac Il 61764. If mail is not addressed correctly it will be returned to the detainee. If the detainee is not known due to improper return address the letter will be destroyed. All legal mail shall be inspected for contraband and sealed in front of a correctional officer.

22

**TABLETS**

Tablets are available in all housing units. Tablets are to be shared and are NOT to go outside the unit or into the cells. At lockdown, the tablets are to be placed on the charger for the night. Tablets are not to be defaced. Stickers are not to be placed on them. The entertainment, education and books are provided by the tablet company which is a third party company. LCJ has no control over what content is on the tablets or when they are changed. Failure to follow the rules of the tablets will result in a loss of that privilege. You will be charged for defacing or breaking a tablet.

**COMMISSARY**

Commissary orders must be ordered through the phone system by Tuesday at 10:00 pm for delivery on Thursday. These days and times are subject to change without notice. Commissary will be distributed on Thursday depending on delivery time*.* Detainees in Disciplinary Segregation or on commissary restriction at the time commissary is distributed will only be allowed hygiene products and writing materials. A limit may be placed on the number and quantity of items that an individual may purchase. There will be a $100 cap on commissary orders weekly. Individual detainees may be limited due to security, medical or administrative reasons. Commissary may be revoked through the disciplinary process for violation of Jail rules. All commissary prices are subject to change without notice.

**LIBRARY SERVICES**

A schedule will be maintained to allow access to the library books. Use of the library may be limited due to the number of detainees wishing to participate. Detainees may only have three books in their possession at any time. If new books arrive in the mail you will be required to either send those books home at your expense or donate them to the jail library. Detainees may not have books dropped off for their personal possession. Detainees donating books to the jail library will be given first access to these books according to the established procedure. All detainees will have access to library services according to the established schedule.

**LAW LIBRARY**

Internet Law Library is available on the detainee kiosk in each unit. Detainees that have discovery materials will be allowed to go to the Law Library computers. Detainees with discovery material will be allotted 1 hour in law library per day and must submit a request for Law Library time through the Kiosks. Detainees in segregation that have discovery material will also need to request its usage on the Kiosk during their normal time out. They will be allowed to go one time per request and it will not count against their normal One hour out time.

**INDOOR/OUTDOOR          RECREATION          AREAS          (YARD)**

Recreational periods will be offered daily at scheduled times. The outdoor recreation area may be closed due to inclement weather or security reasons. Recreation may be suspended individually, due to violations of rules related to or during recreation activities. The recreation area for Detainees in Disciplinary Segregation will be within the Disciplinary unit. Recreation may be cancelled at any time due to security reasons.The

23

outdoor recreation must remain clean at all times or the privilege of having outdoor recreation will be taken. No trash, No shoes, No homemade "balls" will be left and/or thrown out there. No drawing of any kind is permitted!

## SECTION VIII DETAINEE WORK PROGRAMS

### ELIGIBILITY REQUIREMENTS FOR DETAINEE WORKERS

Detainees may request consideration for work assignments through the Classification Officer. Detainee workers are used in the kitchen, laundry and for general maintenance of the facility. A detainee work assignment is a privilege and may be temporarily revoked at any time by any Jail Staff for just cause. When a detainee work assignment is revoked, the Classification Officer will review the reports for reclassification consideration.

Detainee workers will earn $1.00 per day of work.

## SECTION IX EMERGENCY PROCEDURES

### EMERGENCY EVACUATIONS

When an emergency alarm sounds, detainees should remain calm and wait for a direction from a Correctional Officer. Detainees should familiarize themselves with the emergency exit signs and evacuation plans located throughout the facility.

## SECTION X  MEDICAL EDUCATION – ADVANCED HEALTH CARE

This information is designed to assist patients in identifying and treating common ailments. It is strongly recommended that a patient seek medical attention if a problem persists or you experience additional symptoms.

### COMMON COLD

The common cold is caused by many different types of viruses and is not serious.  The usual symptoms include sneezing, stuffy nose, watery nasal discharge, scratchy throat and cough. You may feel achy, tired and have a headache.  Colds are not cured by taking antibiotics like penicillin.  A cold must run its course.  Symptoms are usually worse the 2nd & 3rd days and should stop within 4-7 days.  A cough may last longer than this, especially if you smoke.

Adults average two – four colds per year.  Colds usually occur more in the fall and winter.  The viruses that cause colds are spread mostly by drainage from the nose, coughing and sneezing.  You should cough and blow your nose into paper (Kleenex or toilet paper) and throw it into the trashcan right away.  Try not to get really close to anyone coughing or sneezing who does not cover his/her mouth.  ALWAYS wash your hands after you blow your nose or sneeze.  Do the following if you have a common cold:

24

1. Drink lots of fluids especially clear fluids such as water.
2. Stop smoking.  Smoking can make your cold worse.  Smoking can cause respiratory problems and cancer.
3. Take 2 tabs of regular strength Tylenol for fever, headache, and aches and pains associated with a cold.
4. Rest as much as possible.

You may need some medications to relieve some of the symptoms so if your symptoms get worse put in a sick call to see the medical department.

**GAS, BELCHING & HEARTBURN**

Eating gas-forming foods and swallowing air while you eat can cause gas.  Do the following if you have gas:

1. Take 1-2 antacid tablets for heartburn or gas up to 4 times a day if needed.
2. Avoid gas-producing feeds.
3. Chew foods slowly.

**HEADACHE**

Most people have headaches.  Most headaches are not serious.  Many things can cause headaches – tension, sinus congestion, caffeine, smoking, medications and high blood pressure.  Do the following if you have a headache:

1. Avoid whatever causes your headache.
2. Take 2 tabs Tylenol 2 x day if having a headache.
3. Use moist, cool cloths if this relieves the headache.
4. Rest.  Don't watch TV. Avoid noisy interaction.

**SORE THROAT**

Viruses cause most sore throats.  Antibiotics cannot kill a virus.  It takes 4-7 days for the sore throat to get better.  Do the following if you have a sore throat:

1. Gargle with warm, salty water several times a day.  Do not swallow the salty water.
2. Drink plenty of fluids.
3. Take 2 Tylenol tabs for fever and pain 2 times a day.
4. Stop smoking.

Return to the nurse if conditions get worse or you have no relief.

**SPRAIN**

Stressing or twisting a joint or body usually causes a sprain. Swelling usually occurs and can cause pain.  Do the following if you have a sprain:

25

1. Keep the injured area elevated for 48 hours.  This decreases the swelling and throbbing.
2. Use cold-water cloths on areas for 24 hours and avoid using.
3. Take Tylenol 2 times a day for pain.
4. Notify the healthcare unit if numbness, tingling, cold or blueness appears to the area below the injury.

## NAUSEA AND VOMITING

Nausea and vomiting can have many causes.  The stomach flu is a common cause and does not last for more than 24-36 hours.  Diarrhea may also develop.  If you are sick to your stomach or throwing up, you should do the following:
1. Drink only clear liquids for the next 24 hours.
2. Drink small amounts or sips if you cannot keep anything down.
3. Don't take aspirin, laxatives, or antacids while you are sick to your stomach.
4. Rest for 24 hours.
5. When you are feeling better, start eating food gradually.  Do not eat a lot of spicy, greasy foods at first.

**See the nurse if:**
- You don't feel better in 24 hours
- You can't keep any liquids down.
- You start vomiting up blood.
- You get fever and increased stomach pain.

## INDIGESTION

Eating gas-forming foods or swallowing air can cause indigestion.  It usually is not a serious condition.  Cabbage, coffee, tea, carbonated beverages may cause gas.  Do the following if you have gas:
1. Avoid eating foods that cause problems.
2. Avoid overeating.
3. Remain in an upright position 1-2 hours after eating.
4. Chew your food well and avoid eating fast.
5. Avoid chewing gum which creates air in your stomach
6. Avoid eating 1-2 hours before bedtime.
7. Stop smoking.  Smoking increases acid production.
8. Take antacids: 2 tabs between meals and at bedtime.

## URINARY TRACT INFECTION

26

Urinary tract infections are common in females.  They are caused by bacteria that enter the urinary system through the tube that leads to the bladder where the urine is kept.  Way to prevent Urinary Tract Infections:

1. Drink 8 glasses of fluid per day
2. Limit drinking caffeine drinks while having symptoms
3. Urinate when you feel the urge
4. Don't hold urine for long periods of time
5. Avoid activities (masturbation) that cause friction to the urine outlet
6. Take all medications until gone

They symptoms should begin to get better in 24-36 hours after you start the antibiotic.

**SKIN RASH**

 Many things can cause rashes:

-Plants          -Chemicals

-Medications   -Infections

Often it is impossible to identify the cause of a rash.  Treatment for rashes is to remove what is causing the rash and to relieve symptoms.  Do the following if you have a rash:

1. Wash or bathe in cool water only
2. Avoid whatever caused the rash if you know what it is
3. Notify medical if symptoms of infection occur:
   - Increased redness or swelling, pus formation, heat, red streaks, increased pain or rash spreading

**ACNE**

Acne is a build up of oil at hair roots and oil glands.  Acne may be blackheads, whiteheads or pimples.  There are some factors that cause acne to be worse: some foods, hormones, stress and contact with irritating or oily substances may cause breaking out to get worse.  Do the following if you have acne:

1. Wash your face and any other area that breaks out at least 2-3 times a day.  Use mild soap and don't rub hard.
2. DO NOT squeeze or pick the pimples.  This may cause them to get worse or infected.
3. Wash your hair at least 3 times a week and don't use oils on your hair.
4. Eat a balanced diet.
5. Don't use oily make-up or creams on your face.

**TOOTH DECAY & GUM DISEASE**

Tooth decay and gum disease begin with plaque.  Plaque is a sticky, invisible film that contains bacteria.  It is the major cause of tooth decay and gum disease.  It is constantly forming over the teeth.  How does plaque cause cavities?

1. When you eat sweet foods, the bacteria in plaque combines with sugar to form decay acids that attach to the enamel on your tooth.

27

2.  The cavity grows larger as it enters the dentine.
3.  Decay weakens the enamel further and reaches the sensitive layer of the tooth.
4.  If decay is not checked, an abscess may occur or the bone may become infected.

How does plaque cause gum disease?

1.  Plaque collects beneath the gum line and irritates the gum tissue.  This may cause your gums to bleed when you brush.
2.  If plaque isn't removed, it becomes hardened and forms tartar increasing the irritation to your gums.
3.  Plaque will begin to destroy the tissue holding the gums to the teeth.

Brush to remove plaque.

1.  Prevent your mouth from tooth decay and plaque by brushing.
2.  Hold your toothbrush at a 45-degree angle to the gum line.
3.  Brush back & forth with short strokes, covering one to two teeth at a time.
4.  Brush the back of your teeth – inside & outside.

## INSOMNIA

Some of the things that you can do for yourself if you are having trouble sleeping are:

1.  Reduce and/or stop drinking caffeine drinks.  These include coffee, brown tea, colas and some other soft drinks.
2.  **DO NOT** take naps during the day, at count or in the evening.
3.  Exercise during the day to help tire you out.  This will also help reduce stress.
4.  Go to bed at the same time each night. When you are drowsy and can't sleep, get up and read a book or write a letter until you get drowsy.  Then go back to bed. You may need to repeat this procedure several times.
5.  Get out of bed at the same time each day.
6.  Discuss your problems with staff chaplain, or other mental health professional if available.

The ideas listed above should help you get your sleep problems under control over time. Your body has a natural "clock" built into it.  Sometimes it needs to be corrected.  If you have had sleep problems for a long time, or were using drugs and/or alcohol prior to incarceration, it will take time for you to adjust.  If you are new to the jail or are getting out soon, you will probably have some sleeping problems.  Medications won't cure the problem.  Time and effort from you probably will.

## DANDRUFF

Dandruff can be normal scaling off of the top layer of your scalp.  It can also be caused by seborrhea, which causes an increase in the amount of oil made by the oil glands around the hair roots.  Dandruff can usually be treated by using a dandruff shampoo.  Do the following things:

1.  Shampoo hair 2-3 times weekly in cool or barely warm water.
2.  Use dandruff shampoo.  Make sure you rinse out all the shampoo.
3.  The oil glands around your hair may make more oil if you massage or rub your scalp a lot.

28

If this shampoo does not improve your dandruff problem after one month, return to sick call

**ATHLETES FOOT**

Athletes' foot is caused by a fungus.  Fungi like to grow in warm, moist places. Do the following if you have athletes' foot:

1. Keep you socks & shoes off whenever possible.  Don't sleep with your socks on.
2. Wash your feet with warm, soapy water everyday. Pat dry between your toes. Dry your feet last to keep from spreading the fungus.
3. If you have shower shoes be sure and wear them when you shower.
4. If you have canvas shoes, wear them during the day.
5. Wear socks (white cotton if you have them).  Put clean socks on everyday.  Put socks on before your underwear to keep the fungus from spreading.
6. Apply antifungal cream to the athletes' foot area 2 times daily after you wash your feet.  Rub the cream in well.  It doesn't take much cream.  Wash your hands before and after you apply the cream.  Use the cream as directed by the medical staff.
7. Notify the healthcare staff if any of the following occur:  Increased redness, increased swelling, heat, pus formation, red streaks or increased pain.

29



# NOTICE OF RIGHTS
# OF PERSONS UNDER ARREST
### ILLINOIS CRIMINAL PROCEDURE—725ILCS 5/



## 725 ILCS 5/103-2 Treatment while in custody .

(a) On being taken into custody every person shall have the right to remain silent.

(b) No unlawful means of any kind shall be used to obtain a statement, admission or confession from any person in custody.

(c) Persons in custody shall be treated humanely and provided with proper food, shelter and, if required, medical treatment without unreasonable delay if the need for the treatment is apparent.

## 725ILCS 5/103.5 Right to communicate with attorney and family; transfers; presumption of inadmissibility.

(a) Persons who are in police custody shall have the right to communicate free of charge with an attorney of his or her choice and members of his or her family as soon as possible upon being taken into police custody, but no later than 3 hours of arrival at the first place of detention. Persons in police custody must be given access to use a telephone via a landline or cellular phone to make 3 telephone calls.

(b) In accordance with Section 103-7, at every police facility where a person is in police custody, a sign containing at minimum, the following information in bold block type must be posted in a conspicuous place:

(1) a short statement notifying persons who are in police custody of their right to have access to a phone within 3 hours of being taken into police custody; and

(2) that persons who are in police custody have the right to make 3 phone calls within 3 hours of being taken into custody, at no charge.

(c) In addition to the information listed in subsection (b), if the place of detention is located in a jurisdiction where the court has appointed the public defender or other attorney to represent persons who are in police custody, the telephone number to the public defender or other attorney's office must also be displayed. The telephone call to the public defender or other attorney must not be monitored, eavesdropped upon, or recorded.

(d) If a person who is in police custody is transferred to a new place of detention, that person's right to make 3 telephone calls under this Section within 3 hours of arrival is renewed.

(e) Statements made by a person who is detained in police custody in violation of this section are presumed inadmissible in court as evidence. The presumption of inadmissibility may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances. As used in this subsection, "totality of the circumstances" includes, but is not limited to, evidence that law enforcement knowingly prevented or delayed a person's right to communicate or failed to comply with the requirements of this

30

Section.

(f) The 3-hour requirement under this Section shall not apply while the person in police custody is asleep, unconscious, or otherwise incapacitated or an exigent circumstance prevents the officers from timely complying with this Section. If this occurs, it must be documented within the police report detailing the exigent circumstance. Once the exigent circumstance ends, the right to make 3 phone calls within 3 hours resumes.

(g) In accordance with this Section, the following records shall be maintained: (i) the number of phone calls the person made while in custody; (ii) the time or times the person made phone calls; and (iii) if the person did not make any phone calls, a statement of the reason or reasons why no calls were made.

(h) For purposes of this Section, "place of detention" means a building or a police station that is a place of operation for a municipal police department or county sheriff department or other law enforcement agency, other than a courthouse, that is owned or operated by a law enforcement agency, or other building, such as a school or hospital, where persons are held in detention in connection with criminal charges against those persons.

## 725ILCS 5/103-4 Right to consult with attorney.

Any person committed, imprisoned or restrained of his liberty for any cause whatever and whether or not such person is charged with an offense shall, except in cases of imminent danger of escape, be allowed to consult with any licensed attorney at law of this State whom such person may desire to see or consult, alone and in private at the place of custody, as many times and for such period each time as is reasonable. When any such person is about to be moved beyond the limits of this State under any pretense whatever the person to be moved shall be entitled to a reasonable delay for the purpose of obtaining counsel and of availing himself of the laws of this State for the security of personal liberty

## 725ILCS 5/109-1. Person arrested; release from law enforcement custody and court appearance; geographic constraints prevent in-person appearances.

(a)    A person arrested with or without a warrant for an offense for which pretrial release may be denied under paragraphs (1) through (6) of Section 110-6.1 shall be taken without unnecessary delay before the nearest and most accessible judge in that county, except when such county is a participant in a regional jail authority, in which event such person may be taken to the nearest and most accessible judge, irrespective of the county where such judge presides, within 48 hours, and a charge shall be filed. Whenever a person arrested either with or without a warrant is required to be taken before a judge, a charge may be filed against such person by way of a two-way audio-visual communication system, except that a hearing to deny pretrial release to the defendant may not be conducted by two-way audio-visual communication system unless the accused waives the right to be present physically in court, the court determines that the physical health and safety of any person necessary to the proceedings would be endangered by appearing in court, or the chief judge of the circuit orders use of that system due to operational challenges in conducting the hearing in person. Such operational challenges must be documented

31

and approved by the chief judge of the circuit, and a plan to address the challenges through reasonable efforts must be presented and approved by the Administrative Office of the Illinois Courts every 6 months.

(a-1) Law enforcement shall issue a citation in lieu of custodial arrest, upon proper identification, for those accused of any offense that is not a felony or Class A misdemeanor unless (i) a law enforcement officer reasonably believes the accused poses a threat to the community or any person, (ii) a custodial arrest is necessary because the criminal activity persists after the issuance of a citation, or (iii) the accused has an obvious medical or mental health issue that poses a risk to the accused's own safety. Nothing in this Section requires arrest in the case of Class A misdemeanor and felony offenses, or otherwise limits existing law enforcement discretion to decline to effect a custodial arrest.

(a-3) A person arrested with or without a warrant for an offense for which pretrial release may not be denied may, except as otherwise provided in this Code, be released by a law enforcement officer without appearing before a judge. A presumption in favor of pretrial release shall be applied by an arresting officer in the exercise of his or her discretion under this Section.

(a-5) A person charged with an offense shall be allowed counsel at the hearing at which pretrial release is determined under Article 110 of this Code. If the defendant desires counsel for his or her initial appearance but is unable to obtain counsel, the court shall appoint a public defender or licensed attorney at law of this State to represent him or her.

(b)   Upon initial appearance of a person before the court, the judge shall:

(1) inform the defendant of the charge against him and shall provide him with a copy of the charge;

(2) advise the defendant of his right to counsel and if indigent shall appoint a public defender or licensed attorney at law of this State to represent him in accordance with the provisions of Section 113-3 of this Code;

(3) schedule a preliminary hearing in appropriate cases;

(4) admit the defendant to pretrial release in accordance with the provisions of Article 110 of this Code, or upon verified petition of the State, proceed with the setting of a detention hearing as provided in Section 110-6.1; and

(5) order the confiscation of the person's passport or impose travel restrictions on a defendant arrested for first degree murder or other violent crime as defined in Section 3 of the Rights of Crime Victims and Witnesses Act, if the judge determines, based on the factors in Section 110-5 of this Code, that this will reasonably ensure the appearance of the defendant and compliance by the defendant with all conditions of release.

(c)   The court may issue an order of protection in accordance with the provisions of Article 112A of this Code. Crime victims shall be given notice by the State's Attorney's office of this hearing as required in paragraph (2) of subsection (b) of Section 4.5 of the Rights of Crime Victims and Witnesses Act and shall be informed of their opportunity at this hearing to obtain an order of protection

32

under Article 112A of this Code.

   (d)   At the initial appearance of a defendant in any criminal proceeding, the court must advise the defendant in open court that any foreign national who is arrested or detained has the right to have notice of the arrest or detention given to his or her country's consular representatives and the right to communicate with those consular representatives if the notice has not already been provided. The court must make a written record of so advising the defendant.

   (e)   If consular notification is not provided to a defendant before his or her first appearance in court, the court shall grant any reasonable request for a continuance of the proceedings to allow contact with the defendant's consulate. Any delay caused by the granting of the request by a defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subsection (a), (b), or (e) of Section 103-5 of this Code and on the day of the expiration of delay the period shall continue at the point at which it was suspended.

   (f)   At the hearing at which conditions of pretrial release are determined, the person charged shall be present in person rather than by two-way audio-video communication system unless the accused waives the right to be present physically in court, the court determines that the physical health and safety of any person necessary to the proceedings would be endangered by appearing in court, or the chief judge of the circuit orders use of that system due to operational challenges in conducting the hearing in person. Such operational challenges must be documented and approved by the chief judge of the circuit, and a plan to address the challenges through reasonable efforts must be presented and approved by the Administrative Office of the Illinois Courts every 6 months.

   (g)   Defense counsel shall be given adequate opportunity to confer with the defendant prior to any hearing in which conditions of release or the detention of the defendant is to be considered, with a physical accommodation made to facilitate attorney/ client consultation. If defense counsel needs to confer or consult with the defendant during any hearing conducted via a two-way audio-visual communication system, such consultation shall not be recorded and shall be undertaken consistent with constitutional protections.

## 725ILCS 5/110-2 Pretrial release.

   (a) All persons charged with an offense shall be eligible for pretrial release before conviction. It is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release, including, but not limited to, orders of protection under both Section 112A-4 of this Code and Section 214 of the Illinois Domestic Violence Act of 1986, all civil no contact orders, and all stalking no contact orders. Pretrial release may be denied only if a person is charged with an offense listed in Section 110-6.1 and after the court has held a hearing under Section 110-6.1, and in a manner consistent with subsections (b), (c), and (d) of this Section.

   (b) At all pretrial hearings, the prosecution shall have the burden to prove by clear and convincing evidence that any condition of release is necessary.

33

(c) When it is alleged that pretrial release should be denied to a person upon the grounds that the person presents a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, the burden of proof of such allegations shall be upon the State.

(d) When it is alleged that pretrial release should be denied to a person charged with stalking or aggravated stalking upon the grounds set forth in Section 110-6.3, the burden of proof of those allegations shall be upon the State.

(e) This Section shall be liberally construed to effectuate the purpose of relying on pretrial release by nonmonetary means to reasonably ensure an eligible person's appearance in court, the protection of the safety of any other person or the community, that the person will not attempt or obstruct the criminal justice process, and the person's compliance with all conditions of release, while authorizing the court, upon motion of a prosecutor, to order pretrial detention of the person under Section 110-6.1 when it finds clear and convincing evidence that no condition or combination of conditions can reasonably ensure the effectuation of these goals. (Section 110-4 Repealed)

## 725 ILCS 5/113-3 Counsel.

(a) Every person charged with an offense shall be allowed counsel before pleading to the charge. If the defendant desires counsel and has been unable to obtain same before arraignment the court shall recess court or continue the cause for a reasonable time to permit defendant to obtain counsel and consult with him before pleading to the charge. If the accused is a dissolved corporation, and is not represented by counsel, the court may, in the interest of justice, appoint as counsel a licensed attorney of this State.

(b) In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. If there is no Public Defender in the county or if the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the Public Defender, the court shall appoint as counsel a licensed attorney at law of this State, except that in a county having a population of 2,000,000 or more the Public Defender shall be appointed as counsel in all misdemeanor cases where the defendant is indigent and desires counsel unless the case involves multiple defendants, in which case the court may appoint counsel other than the Public Defender for the additional defendants. The court shall require an affidavit signed by any defendant who requests court-appointed counsel. Such affidavit shall be in the form established by the Supreme Court containing sufficient information to ascertain the assets and liabilities of that defendant. The Court may direct the Clerk of the Circuit Court to assist the defendant in the completion of the affidavit. Any person who knowingly files such affidavit containing false information concerning his assets and liabilities shall be liable to the county where the case, in which such false affidavit is filed, is pending for the reasonable value of the services rendered by the public defender or other court-appointed counsel in the case to the extent that such services were unjustly or

34

falsely procured.

(c) Upon the filing with the court of a verified statement of services rendered the court shall order the county treasurer of the county of trial to pay counsel other than the Public Defender a reasonable fee. The court shall consider all relevant circumstances, including but not limited to the time spent while court is in session, other time spent in representing the defendant, and expenses reasonably incurred by counsel. In counties with a population greater than 2,000,000, the court shall order the county treasurer of the county of trial to pay counsel other than the Public Defender a reasonable fee stated in the order and based upon a rate of compensation of not more than $40 for each hour spent while court is in session and not more than $30 for each hour otherwise spent representing a defendant, and such compensation shall not exceed $150 for each defendant represented in misdemeanor cases and $1250 in felony cases, in addition to expenses reasonably incurred as hereinafter in this Section pro- vided, except that, in extraordinary circumstances, payment in excess of the limits herein stated may be made if the trial court certifies that such payment is necessary to provide fair compensation for protracted representation. A trial court may entertain the filing of this verified statement before the termination of the cause, and may order the provisional payment of sums during the pendency of the cause.

(d) In capital cases, in addition to counsel, if the court determines that the defendant is indigent the court may, upon the filing with the court of a verified statement of services rendered, order the county Treasurer of the county of trial to pay necessary expert witnesses for defendant reasonable compensation stated in the order not to exceed $250 for each defendant.

(e) If the court in any county having a population greater than 2,000,000 determines that the defendant is indigent the court may, upon the filing with the court of a verified statement of such expenses, order the county treasurer of the county of trial, in such counties having a population greater than 2,000,000 to pay the general expenses of the trial incurred by the defendant not to exceed $50 for each defendant.

The provisions of this Section relating to appointment of counsel, compensation of counsel, and payment of expenses in capital cases apply except when the compensation and expenses are being provided under the Capital Crimes Litigation Act.

35